310-0500 Virgil Rockrock et al. appellant Raymond Fabrikas v. Streator Township High School et al. athlete David Collins Mr. Fabrikas? Thank you. Have we pronounced that correctly? No, that's okay. Nobody does that. I didn't... It's Fabrikas. It's your fault. Good morning. Please use the court counsel seat. I have to start with, it's my understanding we're here for oral arguments because of me. And I'm the one who we were sent a request if we wanted to waive oral arguments. And I just wanted to comment on that because I don't have a lot to add. I think both sides have fully agreed to this. But I wanted the court to know that the reason we're here is I believe Judge Heddle made an improper ruling. However, I had to contemplate that this panel would agree with Judge Heddle. And I had to go back to my client and explain that we lost. And I wanted to be able to tell my client that I did everything I could. So I am going to be brief, but I wanted you to know that the reason I'm here is because I wanted to look at the three of you face-to-face and put forth my position even though it's already in the briefs. With that said, I've been in front of all three of you in the past. And if you remember me, I'm typically in Mr. Collins' position of a defense attorney. With that said, I believe Judge Heddle's ruling was wrong in this case. There's two Illinois Supreme Court cases that deal with trampolines. This is a case of weightlifting equipment. But there's the Salami case, Salami v. Eaton, and there's Murray v. Chicago Youth Center. And Judge Heddle, I submit, decided this case based on the Salami case. And I submit the case that he should have followed in ruling in this case is the Murray v. Chicago Youth Center case. And the difference in the two cases, in Salami, it's a homeowner with a trampoline in their yard. And there's children that are using the trampoline, and one of the children is injured. In the Murray case, it's children at a school-sponsored function. It's an extracurricular after-school function, and one of the children is injured using a trampoline. In Salami, the court held that it's an open and obvious condition, and therefore the homeowner is not liable. It cannot be held liable. In Murray, the court held, well, there is liability. And the difference in the two cases is that in Murray, there was an instructor present who was supervising the children. And that is the Murray case, and it's set forth in the briefs, is exactly on point with our case. And I submit that a huge, to me, a huge factor in the case is that in Salami, the homeowner won, and it was a negligence case. In Murray, the school district lost, and it's in this manner, it's a willful lying case. The Supreme Court in Murray said, even though the plaintiff has to show willful lying, this is a case that a jury should decide. And I submit that's exactly what we have in this case. Lindsey was using a piece of weightlifting equipment in a weight class, and she was injured. I submit that Salami deals with open and obvious, and that's what Judge Heddle ruled. Judge Heddle, and on the day he ruled on the motion for summary judgment. And I believe in the record, it'll show that he even said, well, I'm sort of going in a circle here. He said, I find that the defendant owed a duty of care, but I think that this condition is open and obvious. And the duty of care would have been to tell Lindsey to not use this piece of equipment. But since it's in an open and obvious condition, it wouldn't have been of any benefit to tell her anything. I believe that is in the record where it's to that effect. I submit that was incorrect on Judge Heddle's part. I believe whether or not something should have been said to Lindsey and whether something would have been of any benefit, if it was said to Lindsey, is for a jury to decide. The Murray court holds that whether or not something is willful mind, whether or not there's been a breach of duty, is for a jury to decide, not for the court. Again, Judge Heddle simply followed Salami. And it's not disputed that there is an obvious risk of injury in using a piece of weightlifting equipment. And I think Lindsey, I believe it's in the record testifying to her deposition, she realized there could be an injury. And my position is if this was a piece of weightlifting equipment in a room and there was nobody else present and Lindsey went into the room and was using the equipment and was injured, we would not be here today. This would be a case I submit would be open and obvious. And the analogy I put into my brief is a swimming pool case. If there's a child that falls into a swimming pool and there's nobody injured, I'm sorry, there's no one present and the child is injured, the courts, there's many cases that hold it's open and obvious and there's no right of recovery against the owner of the swimming pool. However, the circumstances change when the owner of the swimming pool or whoever is in control chooses to put somebody there to supervise and to instruct. And that's what happened in this case. This is not a case of open and obvious where Lindsey is in a weight that goes into an exercise room, sees a piece of dangerous weightlifting equipment, uses it and is injured. This is a case where there's a class that she's participating in. The school undertook the duty to put an instructor in the class. And then the instructor undertook to supervise or to instruct in the class and Lindsey was injured. The school undertook a duty that I submit or I would agree under other circumstances may not have been there. Again, going back to the swimming pool analogy, there's hotels across the state of Illinois and probably in a lot of other states where they no longer provide lifeguards. They put up a sign, swim at your own risk, and if you fall in the pool or if you're injured in the pool, there's no duty. It's an open and obvious condition. However, if you put a lifeguard there, you've now undertaken a duty. And that's what the school district did. They put an instructor in the class. And by doing so, they undertook a duty of care. And I submit moves the case from Solani to Murray. And with an instructor there, it's now up to the school district to do so in a proper fashion. And I understand that this isn't a negligence case. I understand it's a Wilfred Watten case. Judge Heddle made some comments on that, but he didn't rule on that. Again, his ruling was based on open and obvious. But I would like to state that I understand the burden of Wilfred Watten and I understand that this isn't an easy case. It's a difficult case. But it's a case that a jury should decide. It's not a case that Judge Heddle should have decided and just said that the plaintiff isn't entitled to present her case to a jury. And Murray, and on the issue of Wilfred Watten, this case is extremely similar to the Murray case. And it's the exact same scenario. There was the instructor when Murray had limited education and experience in that field. Mr. Elder in this case has no expertise, no training in weightlifting. I believe his testimony was that when he was taking, when he was in school, he took a class in weightlifting. But he had no training at all in how to teach students, high school students, children, or whatever you would like to call them. No instruction or no experience or training in how to teach them how to use weightlifting equipment. He was under-trained. I believe there were about 36 students in this class with one instructor. And then one other thing, staying on that topic, I submit Judge Heddle, his ruling was improper also because there's a lot of questions, in fact, as to what took place in this class. There was a testimony of a former student, Huff, who said that Mr. Elbert had instructed the students in how to use this piece of weightlifting equipment. Mr. Elbert himself testified, I didn't show them how to use the weightlifting equipment. Mr. Elbert testified that if I saw someone using this piece of weightlifting equipment, they were disciplined for it. There's testimony from my client and the other girls that were in her group that they used this piece of weightlifting equipment a couple times a week whenever they were doing their lower body workout. When they were done with their regular routine, they were supposed to stay busy, and they would use this piece of weightlifting equipment. And Mr. Elbert never told them to not use it, and most importantly, never showed them how to use it. But then to tell them to not use it, and basically, it's my position, he turned a blind eye to what these students were doing. These students are using a piece of equipment on a regular basis that they were never shown how to use. And according to Mr. Elbert, he didn't even know they were using it. And I submit that as evidence that rises to the level of Wolf Mawine. Going back to the swimming pool analogy, it's like a child, an instructor in a swimming pool, and the instructor is teaching these students how to swim, and there's a high dive. And the students aren't supposed to be using the high dive, but the instructor pays no attention at all, turns a blind eye, and the student goes up and climbs on that high dive, falls, and is injured. It's not negligence, it's Wolf Mawine. If Mr. Elbert had instructed the students on how to use the equipment, and Lindsay was injured, maybe it would be a negligence in case it wouldn't rise to the level of Wolf Mawine. If the school district or Mr. Elbert had taken the equipment, put it in a different part of the room where the students weren't supposed to use it, and Lindsay winded it over, and unbeknownst to Mr. Elbert, used the equipment, and she was injured, maybe that's negligence, it doesn't rise to the level of Wolf Mawine. But this was a piece of equipment that was mixed amongst other equipment in the weight room, the students weren't supposed to use it, they weren't told to not use it, and they were allowed to use it without any instruction, and Mr. Elbert just stood there and ignored it. And I submit that that rises to the level of Wolf Mawine. And at least there's evidence of it, in that it's up to a jury, a jury should hear this case, and it should be decided on whether or not there was a breach of duty, and whether or not that breach of duty rose to the level of Wolf Mawine. This is not an open and obvious case, it's not a case where Lindsay was just in a room without anybody present, and is injured working around a piece of dangerous equipment. Unless there's any questions, it's all I have. I need help, sorry. Okay. I'm going to wrap my brain around what you think is Wolf Mawine. If I understand you correctly, it's not that the instructor was improperly trained. The crux of Wolf Mawine is that the equipment was there, and the students were not prohibited from using it. But the instructor, the improperly trained instructor knew the equipment was in the room and did nothing to prohibit students from using it. He did nothing, correct. I mean, I think it adds itself up. I mean, I guess my position is you can take negligence and add it to other negligence and add it to other negligence, and at some point or another does it become Wolf Mawine. So the lack of training by itself, I guess on the part of the school district, in allowing Mr. Albert to be the instructor when he didn't have the adequate training and experience to teach a weightlifting class, is that Wolf Mawine? No, that's probably negligence. But then when you add that to having a piece of weightlifting equipment in a weight room that you don't instruct the students in how to use, that's negligence as well. Do those add up together to get to Wolf Mawine? I don't know. I guess that's something that can be debated. Where I think, standing by itself, it's Wolf Mawine, is that it was recognized that this was a dangerous piece of weightlifting equipment. Mr. Albert's testimony was, I never told these children how to use the equipment. And he said, I don't remember telling them to stay away from the equipment. He said he didn't remember. But he did agree he never told them how to use it. Then they used the equipment. Lindsay and the other girls in her group all testified they used this piece of equipment. They did their lower body workout two days a week, and I believe there was eight pieces of equipment in the routine that they had used. Once they were done with the routine, they were told, you have to stay busy. Go use other pieces of equipment. Use your lower body, which would include this squat rack. And what they would do is, and the testimony was, well, every time we finished every class when we were doing the lower body workout, we got done early and we'd go use this squat rack. Mr. Albert testified, I never saw these girls using that squat rack. How can you not see, I think there were four or five girls in the group, and how can you not see them using it? He turned a blind eye. That, to me, is net negligence. That, I believe, is evidence of willful lying. You've helped me. Thank you. Okay? Thank you. Thank you. Thank you. And Mr. Collins? Good morning. May it please the Court, counsel. My name is Dave Collins, and I represent the defendant's employees in this case, Streeter Township High School, and one of its teachers, Bo Albert. I think that a couple things have been confused here that I want to try to clarify a little bit. We made two arguments before the trial court, and I believe that the court here can affirm the grant of summary judgment on either basis. Our first argument was that under the circumstances, neither defendant owed a duty to remedy the condition or warn Lindsay of the condition as it was open and obvious. Quite simply, if there's no duty, then there can be no liability. I believe we fully set forth our argument on that point, first in our motion for summary judgment and then in our appellate brief, and I don't plan on really arguing that too much today unless the court has questions about it. I would like to spend some time talking, if I could, about the second basis for our motion for summary judgment, which is that if there is a duty, if the defendant's owed a duty to Lindsay, there is no evidence of willful and wanton conduct, which is the burden that the plaintiff has to meet in this case on the part of either defendant, and as such, summary judgment was properly granted. Let me say that the plaintiff focuses on Judge Heddle's ruling, and I just want to reiterate to the court that the court can affirm the trial court's ruling on any basis. So even though Judge Heddle rejected our argument on duty, if the court examines this issue and finds that we owe no duty, the court can affirm summary judgment on that basis. Similarly, the court isn't limited to the basis that Judge Heddle set forth, and while I agree with it, I want to expand it and say that generally what Judge Heddle found was that our conduct did not rise to level of willful and wanton conduct as a matter of law. And so I want to argue that the court isn't, I want to state that the court isn't limited to his ruling. The court can look at this de novo and say, we agree, there is no issue here as to willful and wanton conduct. Willful and wanton conduct is defined in the Tort Immunity Act as a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others. There certainly has been no argument made, nor could any argument be made in this case, that either defendant had an actual or a deliberate intention to cause harm to Lindsay. The question is, are there any facts tending to show that either defendant displayed an utter indifference to or conscious disregard for the safety of Lindsay? There simply are no such facts. I want to correct something that Plaintiff has set forth in his motion, or in his brief. I corrected it in our brief, but I think it bears being restated here. Mr. Albert was asked directly, did you advise these students in this class of not to use this piece of equipment? And he said, I don't recall. That has been switched now, both in the brief and then here at oral argument, to he told them, he didn't tell them, he didn't tell them not to use the equipment. We're talking about a cap-raise machine. I just want to make that point to the Court that what he said was, I don't recall. He has taught a number of these classes over the years, and that's our explanation, is that he didn't recall specifically telling them in this case, in this class, but this is something that he has done previously, and it's something that is, you can look at what I cited in our brief. I set it forth exactly because I wanted the Court to see. The testimony was not, I didn't tell them. The testimony is, I don't recall if I told them. But these facts are undisputed here. Prior to November 21, 2006, which was the day of the accident, the health and fitness class had been taught at Streeter Township High School for several years. The class was taught and continues to be taught several periods each school day by teachers. Prior to the day of the accident, there had been no serious accident in the health and fitness class. Specifically, as related to the cap-raise machine itself, there were no accidents or near-accidents prior to the day of the accident. Prior to the accident, then, hundreds, if not thousands, of Streeter Township High School students had completed the health and fitness class without incident. There's been some allegation here about Mr. Albert's training. Mr. Albert has a bachelor's degree in exercise science and sport with an emphasis in secondary education. He's been teaching at the high school since the fall of 2002. So he's been teaching this, at this school, teaching these courses for approximately four years prior to the incident. He teaches several health and fitness classes each semester. The cap-raise machine was not one of the listed exercises for the lower body workout routine, nor was it one of the listed exercises for the upper body workout routine. In other words, it was not designated for use as part of the class. At the beginning of each semester, Mr. Albert provided instructions to each class on the equipment that was going to be used. At the start of class each day, Mr. Albert gave the class instructions about what they would be doing that day. During the class period, Mr. Albert circulated around the weight room, supervising students, providing instructions, and answering their questions. When Mr. Albert observed a student doing something he or she wasn't supposed to be doing, he stopped them. And specifically, when Mr. Albert observed students using the cap-raise machine, he stopped them, sometimes imposing punishment by requiring them to do push-ups. It's important here that Mr. Albert never witnessed Lindsay using the cap-raise machine. Mr. Albert never instructed the students to use the cap-raise machine. There's no dispute about that. He never instructed the students to use the cap-raise machine. Lindsay elected to use the cap-raise machine. Lindsay was a good student and had no discipline issues, and Mr. Albert could trust her to be doing what she was supposed to be doing. The two students whose depositions are part of the record, Lindsay Rothrock and Ben Hough, were in agreement that Mr. Albert did a good job of communicating what his expectations were for students in the health and fitness class. And I think perhaps the most important undisputed fact here is the testimony of Lindsay Rothrock herself. She has no criticisms of Mr. Albert in connection with the accident and has no reason to believe that Mr. Albert caused her accident. Again, the standard is whether there is any evidence tending to show, quote, an utter indifference to or conscious disregard for the safety of Lindsay by the defendants in this case. And I respectfully submit that there is no such evidence, that there is no genuine issue of material fact, and that the trial court properly granted summary judgment in this case. In trying to make sense of all this, it seems to me that at best what we have is a statement made by Mr. Albert and a misunderstanding of that statement by Lindsay. Specifically, Mr. Albert testified that he told the class, quote, and this is from his deposition testimony, quote, to keep busy with the workout you've been given, close quote. Lindsay understood Mr. Albert to have said words to the effect, and this is from her deposition testimony, quote, make sure you keep on doing stuff that will help with the type of workout for the day, close quote, which she interpreted as meaning she could use the calf raise machine on lower body workout days. Again, Mr. Albert never instructed the students to use the calf raise machine, and Mr. Albert, although he supervised the class, he never witnessed Lindsay using the calf raise machine. These punishments, the push-ups and so forth, were they in this class or in prior classes? Yes, sir. And I know for sure they were in this class because questions were about this class specifically. And going back to my point here about this misunderstanding or this miscommunication, a miscommunication, and this supposed miscommunication specifically, cannot rise to the level of willful and want conduct on the part of the school district or Mr. Albert. As such, I respectfully request that the court affirm the grant of summary judgment in defendant's favor as to counts 2, 4, 8, and 10 of plaintiff's third amended complaint. I'm sorry. Please. Murray and Salami were not school settings, correct? Salami was not. It was a homeowner. Murray was a school setting. However, the Chicago School District had contracted or allowed, I think, probably a not-for-profit organization. I think it was Chicago Youth Center or something like that to have, during the lunch hour, to have. . . What's the word I'm looking for? Did the accident occur on school property? It was on school property, yes. It was during the lunch hour, but this was a. . . Do you think the school setting affects duty and whether duty exists? And what I'm thinking of is that this was not an exercise class but a shopping class? Were there saws and other kinds of equipment? I'm just trying to think about what our decision could mean down the road if we were to conclude there was no duty. Yes, I definitely agree that the school setting affects this because you're exactly right. Let's take a shop setting and let's say that they've been trained on certain pieces of equipment to use, power equipment, and they're not given instruction on other pieces of power equipment in the room. Maybe those are used for a different class. And the teacher is there, the teacher is supervising it, and one of the kids goes over and uses one of these pieces of equipment that they've not been trained on and sustains an injury. I think that's exactly the kind of case that we have here. I mean, it's just weight room to shop class. In that situation, you would say there was no duty? I would say that, yes, that a piece of equipment, a piece of power equipment, like a piece of weightlifting equipment, is an open and obvious hazard. It's something that the school district doesn't have any duty to remedy or to warn of. And so I would say it's exactly- If we take what I'm concerned about and put an instructor in the shop class that has never taught a shop class before, but instructs on certain equipment and not others, and a child is injured because he's curious or she's curious and goes to that piece of equipment, you're still saying an under-trained instructor does not have a duty? You're still thinking that scenario applies? Well, the piece of equipment is the piece of equipment. I mean, it's a standalone, and the piece of equipment is what determines whether it's the condition, and that gives rise to whether there's a duty to remedy that condition or warn of the condition. So it's the table saw that they haven't been taught on. They didn't have to hear anything about a table saw. A 14- or 15-year-old student should be able to look at a table saw and say, this is a hazard and I shouldn't operate it or I shouldn't use it without- Is there a certain circuit of equipment that people use and not others, or that he supervises larger groups instead of allowing them to individually go to the shop? I think that the teacher has a duty to supervise, and that supervision in this case specifically was provided- And not a willful and want. It certainly didn't rise to the level of willful and want. No, certainly not. Not anywhere close to willful and want. I think when I think about willful and want- Okay, if there is no duty, and I'm really sorry to do this to my other panel members- Not at all. But if there is no duty, then does the school have to provide an instructor? Well, the school- If there is no duty, does the school have to provide an instructor? I'm just trying to test your theory that there is no duty. The school could have a weight room, and the school could say, we're not going to use this for curricular purposes, we're just going to have a weight room. That's not the situation. That's right. But when the school uses the weight room for instructional purposes, then I think that there is a duty on the teacher to instruct, to supervise, to do the things that a teacher is required to do. The teacher did that in this case. Okay, so you're conceding there is a duty. I'm conceding that the school has undertaken a limited duty here to properly instruct the students on the equipment that's going to be used and properly supervise them in what they're doing. But when the student goes off and uses a piece of equipment or uses a table saw, it's an open and obvious, and the teacher didn't have a duty, or the school district didn't have a duty to warn them. Help me, I'm sorry to test you this way, but it's my only opportunity- Sure, absolutely. To kind of ferret out the issues in my brain. Thank you. Okay, thank you very much. Thank you. Mr. Frisch, is there any rebuttal? Bruce. I respectfully strongly disagree with counsel. I don't believe you can have a bunch of equipment, whether it's saws or whether it's exercise equipment, in a room. Put an instructor in a room and say, okay, well, we're only going to have a duty to supervise you and instruct you on those pieces of equipment that we want you to use. If the equipment's in the room, and particularly in a case like this where there's evidence the students are using the equipment, you have a duty to supervise the use of the equipment. You either have to tell the students don't use it, and you make it so they don't use it, or you instruct them on how to use it. I mean, Justice Wright, I think, brings up a good point. He said, well, don't you now have a duty? And according to counsel, I think his position is, and I'm not carrying it out to an extreme, is you have a class, you put the instructor sitting in a corner in a chair, and you just say, well, go ahead and use the equipment. And if you're injured, we're not at fault because it's all open and obvious evidence. It's all dangerous equipment. If you take an instructor and you put him in the room, and the instructor's going to teach them in that class how to use weightlifting equipment or if it's a saw or something like that, the instructor has a duty to supervise. And counsel, in his argument, relies on the fact that Mr. Albert was doing the things that he was supposed to do. He's a highly trained professional who would circulate around the room, and when he saw somebody doing something that they weren't supposed to be doing, he disciplined them. Now, if all of the evidence was consistent on that, I think that argument would have some merit. However, Mr. Albert agreed in his deposition that he never saw Lindsay use the equipment, and he never disciplined her for using the equipment. And Lindsay testified, and the other individual whose deposition is in the record testified, they used that piece of equipment on a regular basis. Well, how can Mr. Albert be walking around the room supervising the children in a diligent fashion but never see these children, a group of four or five girls, using the equipment on a regular basis? He wasn't there. My conclusion is he wasn't supervising them, that he wasn't paying attention, and the comment I made before was he was turning a blind eye. At a minimum, I submit it's a question of fact that a jury should decide whether or not he was doing what he was supposed to do. And the other comment I wanted to make was the analogy to a saw. If you're teaching a class that is a saw class, and you're teaching students how to use a particular type of saw, and everything has a blade, a round blade to it, and then off in the corner you have a bandsaw, which is a strip-type blade, and you tell the students, well, we're going to use saws, and you go through your routine and use these different saws because you keep busy in using the saws, and one of the students wanders off and uses the bandsaw that they're not supposed to be using but they haven't been told to not use, and they haven't been instructed in how to use that saw, I submit that's a breach of the duty of it. You have to supervise the students. You can't say I only have a duty as to the pieces of equipment that I've instructed you how to use, keeping in mind that Mr. Albert testified I did not tell these students or I did not instruct them in how to use this piece of equipment. And counsel said he wanted to correct what I said. I do not believe I made a misquote. Mr. Albert, in his deposition, testified I did not show these students how to use this piece of equipment. He was certain he did not show them. He testified I do not remember if I told them to not use it, and I don't believe I misspoke either in the briefer or in my initial argument, my initial comments. But if there's a piece of equipment in the room and it's dangerous and you've undertaken the task of putting a supervisor in the room, that supervisor has to supervise the students as to all of the risks and dangers in the room. You can't say, well, you know what, you're not supposed to be using that one, so I don't have a duty as to that. The duty goes to everything that's in that room. Thank you. Thank you very much. Thank you both for your argument today. We will take this matter under advisement.